UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SHANIQUA BUNTON, <br> INDIVIDUALLY AND ON BEHALF <br> OF ALL OTHERS SIMILARLY <br> SITUATED, <br>     *Plaintiff,* <br> <br> v. <br> <br> LOGISTICARE SOLUTIONS, LLC, <br>     *Defendant.* | § § § § § § § § § § | Case No. A-19-CV-00372-LY-SH |

## <u>Order Granting in Part Plaintiff's Motion for<br>Conditional Certification and Notice</u>

Before this Court are Plaintiff's Opposed Motion for Conditional Certification and Notice to the Putative Class Members, filed July 11, 2019 ("Motion") (Dkt. No. 15), and the related response and reply briefs. On December 6, 2019, the District Court referred all pending and future motions in this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

Because conditional certification involves non-dispositive issues, the undersigned has authority to enter this order pursuant to 28 U.S.C. § 636(b)(1)(A). *See, e.g.*, *Mendoza v. AFO Boss, LLC*, 402 F. Supp. 3d 355, 358 (W.D. Tex. 2019); *Esparza v. C&J Energy Servs., Inc.*, No. 5:15-CV-850-DAE, 2016 WL 1737147, at *1 (W.D. Tex. May 2, 2016).

### I. Background

This is a collective action to recover unpaid back wages pursuant to the Fair Labor Standards Act of 1938, as amended ("FLSA"), which establishes federal minimum-wage and overtime standards. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013). Pursuant to 29

U.S.C. § 216(b), the FLSA gives employees the right to bring a private cause of action against their employer on "behalf of himself or themselves and other employees similarly situated."

Defendant LogistiCare Solutions, LLC ("LogistiCare") brokers non-emergency medical transportation programs for state government agencies and managed care organizations. Declaration of Jenny Southern, Senior Vice President of Human Resources for LogistiCare, Exhibit A, Dkt. No. 22-1 ("Southern Dec.") at ¶ 3. It employs more than 3,160 non-exempt employees at its 18 call centers in 16 states. *Id.*

Plaintiff Shaniqua Bunton ("Bunton") was employed by LogistiCare in Austin, Texas, as an hourly Customer Service Representative from 2017 to 2018.[1] In her Complaint, Bunton alleges that LogistiCare required her and other members of the putative class to work without compensation for up to 20 minutes before the official beginning of each of their scheduled work shifts to start their computers and log in to all LogistiCare programs. *See* Dkt. No. 1 at ¶¶ 32-39. Bunton further alleges that she and other putative class members were not compensated at the rates required by the FLSA for similar amounts of time they spent rebooting their computers after each of multiple weekly computer crashes, nor for any break time that exceeded fifteen minutes, including time worked in excess of a forty-hour workweek. *See id.* In all, Bunton alleges that she often worked from one to three hours in addition to her scheduled hours each week without compensation. Dkt. No. 15-1, Bunton Dec. at ¶¶ 12-14. Bunton also asserts a class action alleging violations of Texas common law.[2]

---

[1] The claims of another named plaintiff, Tiffany Adams, were dismissed as barred by the statute of limitations. *See* Dkt. No. 14.

[2] Plaintiff moves only for conditional certification under FLSA § 216(b) and not class certification under FED. R. CIV. P. 23.

## II. Legal Standard

"The remedial nature of the FLSA and § 216 militates strongly in favor of allowing cases to proceed collectively." *Pedigo v. 3003 South Lamar, LLP*, 666 F. Supp. 2d 693, 698 (W.D. Tex. 2009) (cleaned up). The decision whether to conditionally certify the class and facilitate notice of potential class members "remains soundly within the discretion of the district court." *Mateos v. Select Energy Servs., LLC*, 977 F. Supp. 2d 640, 644 (W.D. Tex. 2013).[3]

Although the Fifth Circuit has declined to adopt a specific test to determine whether a court should certify a class or grant notice in a FLSA § 216(b) action, this Court, like most other federal courts, has adopted the test applied in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *Pedigo*, 666 F. Supp. 2d at 696-97; *see also Dyson v. Stuart Petrol. Testers, Inc.*, 308 F.R.D. 510, 512 (W.D. Tex. 2015). The *Lusardi* test is an *ad hoc* analysis conducted on a case-by-case basis, as described by the Fifth Circuit Court of Appeals:

> Under *Lusardi,* the trial court approaches the "similarly situated" inquiry via a two-step analysis. The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
> The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and

---

[3] A district court has wide discretion in deciding whether to certify a class and is not obliged to conduct an evidentiary hearing on the issue of class certification. *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir. 1999). Here, neither party requested an evidentiary hearing, and it is the Court's opinion that a hearing is unnecessary to determine whether Plaintiff's putative class should be conditionally certified.

> makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims. (footnote omitted).

*Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 US 90 (2003).

This case is in the first stage, *i.e.*, the notice stage. At the notice stage, the district court "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010). It is the plaintiff's burden to make the preliminary factual showing that a similarly situated group of potential plaintiffs exists. *Mendoza*, 402 F. Supp. 3d at 357; *see also Mateos*, 977 F. Supp. 2d at 643-44.

Generally, to meet his or her burden, a plaintiff must show that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects, given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. *Laney v. Redback Energy Servs., LLC*, 285 F. Supp. 3d 980, 985 (W.D. Tex. 2018); *Vega v. Point Security, LLC*, A-17-CV-049-LY, 2017 WL 4023289, at *2 (W.D. Tex. Sep. 13, 2017).

### III. Conditional Certification

The Court first must decide whether to conditionally certify Bunton's proposed class:

> All hourly call-center employees who worked for LogistiCare Solutions LLC, anywhere in the United States, at any time in the past three years through the final disposition of this matter.

**A. There Is a Reasonable Basis to Believe that Other Aggrieved Individuals Exist**

To satisfy the first element of the test that courts apply at the initial notice stage of the *Lusardi* analysis, Bunton need only show that there is a reasonable basis to credit the assertion that other aggrieved individuals exist. *See Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012). In support of her Motion, Bunton submitted a declaration, in which she stated that she

> worked with several hundreds of other LogistiCare hourly Call-Center Employees at the Austin call center. We all followed the same policies and procedures, as set by LogistiCare. I know this because the basic policies and procedures for all LogistiCare employees are posted online, taught in orientation, and repeated by managers and executives constantly. All employees follow those same policies and procedures.

Dkt. No. 15-1 at ¶ 4. Bunton also stated that she knew that her job and her coworkers' jobs "were substantially similar, because we all attended the same orientation together and we were all taught the same policies and procedures for logging into the computer, opening our programs, and clocking in for the day." *Id.* at ¶ 6. It was LogistiCare's policy that all employees at the Austin call center arrive before their shifts started "so they would have enough time to get their computer systems up and running" by shift start, Bunton stated. *Id.* at ¶ 7.

These statements from Bunton's declaration show that there is a reasonable basis to believe her assertion that other aggrieved individuals exist. In addition, in support of her Motion, Bunton submitted nearly identical declarations from seven other former Customer Service Representatives who worked at LogistiCare call centers in Austin, New York, and Arizona in recent years. *See* Dkt. Nos. 15-2 through 15-8. Although one of the declarants also worked as a team lead, *see* Dkt. No. 15-3, and another held additional job roles, *see* Dkt. No. 15-4, these declarants all allege the same wage and hour violations.

LogistiCare contends that the declarations in support of Bunton's Motion are inaccurate in that hourly employees use an ADP timekeeping system through a desktop icon on their work computers, not their phones, and that clocking in takes less than a minute. *See* Response, Dkt. No. 22 at 3, 5-6; Southern Dec., Dkt. No. 22-1 at ¶¶ 7-9, 13-14. Because the timekeeping system is computer-based, LogistiCare's response is not necessarily inconsistent with Bunton's allegations that she and other call center employees were required to spend uncompensated time regularly amounting to one to three hours each week waiting for their computer to open to the desktop, opening and logging into each program, etc. *See* Bunton Dec., Dkt. No. 15-1 at ¶ 8. In any event, the Court finds that LogistiCare's arguments and evidence concerning its timekeeping systems go to the merits of Bunton's claims and "do not defeat [Bunton's] arguments for conditional certification." *Holt v. XTO Energy, Inc.*, No. 16-CV-00162-RAJ, 2017 WL 10676816, at *3 (W.D. Tex. June 14, 2017); *see also Snively v. Peak Pressure Control*, 174 F. Supp. 3d 953, 960 (W.D. Tex. Feb. 29, 2016).

The Court finds that the first element of the *Lusardi* test is satisfied.

**B. There Is a Reasonable Basis To Believe that a Class of Similarly Situated Persons Exists**

To meet the second element of the *Lusardi* test, a plaintiff must demonstrate a reasonable basis for believing that a class of "similarly situated" persons exists. *See Heeg*, 907 F. Supp. 2d at 862. Courts consider whether aggrieved individuals are similarly situated "in relevant respects given the claims and defenses asserted." *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010). In wage and hour cases such as this one, plaintiffs must show that proposed class members are both "similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Pedigo*, 666 F. Supp. 2d at 700. Thus, the relevant inquiry for the Court is whether the proposed class members performed the same basic tasks as part of their

employment and were subject to the same pay decisions, policies, or practices. *See Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 996 (E.D. Tex. 2011).

This does not mean that employees must be similarly situated in "each and every aspect" of their employment. *Id.*; *see also Minyard v. Double D Tong, Inc.*, 237 F. Supp. 3d 480, 490 (W.D. Tex. 2017) ("A class that encompasses a wide range of job positions may be conditionally certified as long as the differences between class members are not material to the allegations of the case."). Rather, a plaintiff must show that there are "some identifiable facts or legal nexus [that] bind[s] the claims so that hearing the cases together promotes judicial efficiency." *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010) (quotation omitted). Ultimately, "[a] court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy or practice." *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 825 (N.D. Tex. 2007) (citation omitted).

1. **Bunton's Evidence Concerning Job Requirements and Payment Provisions**

Each of the eight declarations from former employees submitted in support of Bunton's Motion (including Bunton's) states, at ¶¶ 15-16, that LogistiCare's corporate policies and procedures applied to all hourly employees at all LogistiCare call centers across the country, and that:

> . . . LogistiCare regularly made it clear that its policies were made at the corporate level and that strict compliance with its policies was critical.
> Based on my experiences and conversations with other Call-Center Employees and my personal observations, I know that other Call-Center Employees were required to work off the clock just as I did. They were subject to the same corporate policies as I was that required them to log in to their computers before their shifts had started.

*E.g.*, Dkt. No. 15-1 at ¶¶ 15-16. Such declarations are probative at this stage of the proceeding. *See, e.g.*, *Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 764 (N.D. Tex. 2013) (finding it reasonable

to infer at notice stage that employees "had personal knowledge of the employment conditions of other [employees] based on their own observations and experiences during their employment"); *Dyson*, 308 F.R.D. at 514 (finding that affiant acquired personal knowledge of company's practices "by way of his own employment with the company, as well as specifically inquiring of other workers concerning their experiences"); *see also Alverson v. BL Rest. Operations LLC*, No. 5-16-CV-00849-OLG-RBF, 2017 WL 5491998, at *5 (W.D. Tex. Nov. 15, 2017) (stating that it is appropriate to grant company-wide certification where there is a reasonable basis to conclude that the same policy applies to multiple locations of a single company).

### 2. The Proposed Class

LogistiCare argues that employees at its call centers do different jobs, *see* Dkt. No. 22 at 9, and submitted evidence that some non-exempt call center employees "may or may not need to log in to the telephone system to perform their jobs." Southern Dec., Dkt. No. 22-1 at ¶ 4. In her reply, Bunton states that she "would agree to amend the class definition to clarify that only those who must log into their various systems before they are paid are included." Dkt. No. 25 at 3 n.1. Accordingly, the Court amends the putative class definition to the following:

> All hourly call-center employees who worked for LogistiCare Solutions LLC, anywhere in the United States, at any time in the past three years through the final disposition of this matter, who were required to log in to their computers, phones, and internet programs before beginning their work for the day.

### 3. LogistiCare's Arguments

LogistiCare also argues that Bunton has not met her burden to show that the putative class members are similarly situated to her because the claims of two of the declarants are time-barred, while most of the other declarants and former employees who submitted the opt-in consents

discussed below signed standalone "Jury and Class/Collective Action Waivers" as part of their employment with LogistiCare.[4] *See* Dkt. No. 22-1, Exhibit A-1 at 5-21.

Bunton does not acknowledge that these waivers are proper. *See* Dkt. No. 25 at 4 n.2. The facts here thus are distinguishable from the case on which LogistiCare relies, *Smith v. M-I, LLC*, 5:17-CV-00788, 2018 WL 3866624, at *5 (W.D. Tex. Aug. 14, 2018), in which the plaintiff did not dispute the validity or enforceability of a collective action waiver. *See* Dkt. No. 22 at 7. In addition, no waivers are of record for declarant Stephanie Williams, who worked at the New York call center, nor for the two former employees who have "opted in" to the suit since LogistiCare filed its response. *See* Dkt. Nos. 5-12, 15-6, 22-1, 28, 30. Moreover, Bunton and one individual who also worked at the Austin call center and has consented to opt in, Pamala Allen (Dkt. No. 10), did not sign standalone collective action waivers, although it appears that both acknowledged receiving LogistiCare's Employee Manual, which includes among other provisions a jury and class/collective action waiver. *See* Response, Exh. A-2, Dkt. No. 22-1 at 22-27. Thus, even assuming that the waivers of record are valid, Bunton has shown that at least one to four other potential class members exist who are similarly situated to her in this respect. *See Villareal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 916 (S.D. Tex. 2010) (granting conditional certification with plaintiff and two opt-in plaintiffs).

---

[4] The waivers of record do not include arbitration agreements. *Cf., e.g.*, *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018) (upholding collective action waivers in arbitration agreements); *In re JPMorgan Chase & Co.*, 916 F.3d 494, 501 (5th Cir. 2019) (holding that district courts may not send notice to an employee with a valid arbitration agreement unless the record shows that nothing in the agreement would prohibit that employee from participating in the collective action).

### 4. Conclusion as to the Second *Lusardi* Factor

In view of Bunton's wage and hour claims, the declarations submitted demonstrate that there is a class of individuals similarly situated to her in terms of the job requirements and payment provisions that she asserts. The record shows there is a reasonable basis to believe that members of the proposed class performed the same basic tasks as part of their employment and were subject to the same pay decisions, policies, or practices. The Court finds that the circumstances Bunton alleges are not purely personal to her, but applicable to a larger class of employees. Accordingly, Bunton has established the second element of the *Lusardi* analysis.

### C. Bunton Has Sufficiently Demonstrated that Others Want To Join This Suit

The final inquiry as to conditional certification is whether Bunton has demonstrated that there are others who may desire to "opt in" to this litigation. *See generally Clark v. City of Fort Worth*, 800 F. Supp. 2d 776, 780 (N.D. Tex. 2011). Paragraph 17 of each of the eight declarations submitted in support of Bunton's Motion states: "Based on my conversations with other Call-Center Employees, I believe that they would be interested to learn that they may recover unpaid wages and overtime from LogistiCare and would be interested in joining the lawsuit." Bunton, furthermore, has submitted a total of 23 consents to join this case from the eight declarants and 15 others. *See* Dkt. Nos. 1, 5-7, 10-11, 28, 30.

The declarations and consent forms of record are sufficient to establish that other aggrieved individuals who are similarly situated may desire to opt into this case. *See Dyson*, 308 F.R.D. at 513-14; *Pacheco v. Aldeeb*, No. 5:14-CV-121-DAE, 2015 WL 1509570, at *8 (W.D. Tex. Mar. 31, 2015); *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 291 (N.D. Tex. 2012); *Tolentino*, 716 F. Supp. 2d at 653. That some putative class members have executed collective-action waivers

does not defeat conditional certification, although the waivers ultimately may determine which former employees can join the suit. *Smith*, 2018 WL 3866624, at *4.

### D. LogistiCare's Rule 23 Argument

Finally, LogistiCare argues, without authority, that because Plaintiff brought this claim as a collective action pursuant to § 216(b) and also as a class action pursuant to FED. R. CIV. P. 23, conditional certification is not appropriate. *See* Dkt. No. 22 at 9-10. Bunton replies that opt-out collective actions under § 216(b) and opt-in class actions under Rule 23 not mutually exclusive and are brought together regularly. *See* Dkt. No. 25 at 5; *see also, e.g.*, *Peery v. Nixon Eng'g, LLC*, No. 6:18-CV-00358-ADA-JCM, 2019 WL 2565237, at *3 (March 13, 2019) (stating that an argument that the two claims are fundamentally incompatible "appears to lack merit," citing *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1037, 1043 (2016)); *Calvillo v. J & M Tank Lines, Inc.*, No. SA-15-CA-1165-FB, 2016 WL 7479574, at *1 (W.D. Tex. Apr. 15, 2016), *report and recommendation adopted*, No. SA-15-CA-1165-FB, 2016 WL 7479575 (W.D. Tex. May 10, 2016) (seeking to proceed as collective action with respect to FLSA claim and Rule 23 class action with respect to claims under the New Mexico Minimum Wage Act). LogistiCare's argument is unpersuasive.

### E. Conclusion as to Conditional Certification

Because Bunton has stated a FLSA violation and the evidence before the Court shows that there is a reasonable basis for crediting Bunton's assertions that other aggrieved individuals exist, that they are similarly situated to her, and that at least some of them desire to opt into this case, Bunton has provided sufficient evidence to satisfy the first stage of the *Lusardi* analysis. The Court therefore conditionally certifies this as a collective action under 29 U.S.C. § 216(b) with respect to the putative class, as amended, identified above.

## IV. Notice and Disclosure of Contact Information

Once a court decides that class certification is appropriate, it is within its sound discretion to order notice. *See Laney*, 285 F. Supp. 3d at 988. Granting certification and issuing notice will have "the advantage of informing the original parties and the court of the number and identity of persons desiring to participate in this suit. With that information, analysis may be performed on the viability of the class and its representatives." *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003). Courts routinely grant discovery of identity and contact information for putative plaintiffs once conditional certification has been granted. *See, e.g.*, *Clarke v. Convergys Customer Mgmt. Grp., Inc.*, 370 F. Supp. 2d 601, 607 (S.D. Tex. 2005); *Jones v. JGC Dallas LLC*, No. 3:11-CV-2743-O, 2012 WL 6928101, at *5 (N.D. Tex. Nov. 29, 2012).

LogistiCare makes no specific objection to the proposed notice submitted by Bunton, merely contending that "Plaintiff's proposed notice is objectionable and that the issue of the notice is premature." Dkt. No. 22 at 10. LogistiCare asks that the Court order the parties to confer on the notice or, in the alternative, order briefing "to fully address all aspects of the content of the notice and consent form." *Id.* As Bunton points out in her reply, LogistiCare thus failed to timely object to the form and content of her proposed notice and consent form, or to her proposed distribution methods and timelines.

The Court identifies no apparent problems with the proposed notice and consent format at Dkt. No. 15-9, nor with the proposed distribution order at Dkt. No. 15-10 at 2-3, **EXCEPT THAT** LogistiCare will not be required to disclose the dates of birth or the driver's license numbers of the putative class members.

Nonetheless, as LogistiCare has requested, the parties are **ORDERED** to confer on the specifics of the notice **WITHIN 21 DAYS OF THE DATE OF THIS ORDER**. **IT IS FURTHER ORDERED** LogistiCare must disclose to Bunton the potential class members' names, addresses, e-mail addresses, telephone numbers, and dates of employment, "in a usable electronic format," Dkt. No. 15-10 at 2, at or before the conference.

## V. Conclusion

Based on the foregoing, it is hereby **ORDERED** that Plaintiff's Opposed Motion for Conditional Certification and Notice to the Putative Class Members (Dkt. No. 15) is **GRANTED IN PART** in that the following class is conditionally certified:

> All hourly call-center employees who worked for LogistiCare Solutions LLC, anywhere in the United States, at any time in the past three years through the final disposition of this matter, who were required to log in to their computers, phones, and internet programs before beginning their work for the day.

**IT IS FURTHER ORDERED** that, by **Friday, February 14, 2020** the parties must submit to the Court for consideration either a joint proposed notice and consent form or competing options for notice, including an indication as to which portions are agreed.

**SIGNED** on January 22, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE